IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL POOLE,

   Plaintiff,

v.

REGINALD CHESIL,
OFFICER CHRISTOPHER GRUBBS,
WILLIAM BOHRER,
BETHANY CORNECHIA,

   Defendants.

Civil Action No.: JRR-24-2710

**MEMORANDUM OPINION**

In response to the above-entitled civil rights complaint, Defendants[1] Christopher Grubbs, William Bohrer, and Bethany Cornechia filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 25. Defendants have also filed a Motion to Seal medical records filed in support of the dispositive motion; the Motion to Seal shall be granted. ECF No. 27. Self-represented Plaintiff Michael Poole was advised of his right to file an opposition response to Defendants' motion and of the consequences of failing to do so, but has filed nothing further in the case. ECF No. 28. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2025). For the reasons that follow, Defendants' motion shall be granted.

**I.  Background**

   **A.  Amended Complaint**

In his Amended Complaint, Mr. Poole alleges that while he was incarcerated at Maryland Correctional Training Center ("MCTC") from June 26 to June 28, 2023, Officer Grubbs told inmate Reginald Chesil that Mr. Poole was a registered sex offender and offered to pay Mr. Chesil

---

[1] Defendant Reginal Chesil is an inmate who was Plaintiff's cellmate. Because he is not a state-actor, a federal constitutional cause of action may not be maintained against him and he shall be dismissed from suit.

to sexually assault Mr. Poole. ECF No. 6 at 4. Mr. Poole claims he was physically and sexually assaulted by Mr. Chesil. *Id*. He states that "corrections officials" put him in "an environment detrimental to [his] safety and knowingly left [him] to be victimized." *Id*. He further claims he was not provided with medical attention and corporal punishment was used against him. *Id*. Mr. Poole also claims that correctional staff failed to turn in his administrative remedy procedure complaints ("ARP") and his informal complaints; confiscated his mail; and refused him meals. *Id*. at 5. He adds that, following the assault, he was treated "like an animal," with his mail and phone calls intercepted "and more." *Id*.

Mr. Poole claims as injuries a fractured wrist and arm, mental and emotional suffering, incontinence issues, and a visible lump on his wrist. ECF No. 6 at 5. He seeks $350,000 in damages and release from prison.[2] *Id*. He also requests tougher screening when hiring correctional officers and "tougher PREA[3] laws." *Id*.

### B. Defendants' Response

The following facts are undisputed, and supported by admissible evidence, which Mr. Poole has declined to challenge or refute. According to the undisputed facts offered by Defendants, on June 7, 2023, Mr. Poole was placed on Administrative Segregation Pending Adjustment in Cell 2-041 on D Tier in Housing Unit 7, a double occupancy cell. ECF No. 25-2 at 5. On June 15, 2023, Mr. Poole was seen in the medical dispensary for an emergent referral "after reporting he was suicidal to custody." ECF No. 26 at 19. When he was interviewed by medical staff, he "denied current suicidal, homicidal, and self-harming ideations." *Id*. A suicide risk assessment was completed and Mr. Poole scored as a low risk; he was advised on alternative ways to handle

---

[2] Since filing his complaint, Mr. Poole has been released from custody (unrelated to the instant action). *See* ECF No. 25 at 2.
[3] Prison Rape Elimination Act of 2023.

"housing issues" and returned to his housing unit. *Id*. Mr. Poole was also told he would need to tell custody staff about concerns regarding his housing assignment. *Id*.

On June 21, 2023, Mr. Poole was moved from Cell 2-041 on D Tier of Housing Unit 7 to Cell 2-034 on B Tier of the same housing unit, where Reggie Chesil was already housed. ECF No. 25-2 at 5; ECF No. 25-4 at 3.

On June 24, 2023, Mr. Poole informed correctional officers he was having incontinence issues and wanted to be moved to another cell. ECF No. 26 at 15-16. He told Karla Laurent, the nurse who spoke with him at sick call for "suicide ideations," that he was trying to be moved to another cell due to his incontinence issues and an officer called him a child molester. *Id*. at 15. After hearing the officer call Mr. Poole a child molester, Mr. Chesil insisted that Mr. Poole needed to get out of the cell. *Id*. When Mr. Poole told an officer about the statement his cellmate made, his request to be moved was denied, so Mr. Poole said he would kill himself. *Id*. at 16. When asked if he had a plan for how he would kill himself, he denied having one and told Ms. Laurent that "he had to get out of that cell." *Id*. When Ms. Laurent tried to explain to Mr. Poole the proper ways to request a cell move, he said that he knew about those but that he "had to move now." *Id*. Mr. Poole was returned to the cell he shared with Mr. Chesil after it was determined he was not suicidal. *Id*.

On June 26, 2023, Mr. Poole was moved to Cell 2-038 on C Tier in the same housing unit. ECF No. 25-2 at 5. The following day Mr. Poole wrote a letter to the Commissioner of Correction about the June 24 incident where "an officer" told "everyone on the tier that [he is] a pedophile" placing him in danger of being sexually assaulted or killed. ECF No. 25-5 at 3. Importantly, Mr. Poole did not report actually being assaulted in his letter to the Commissioner. Further, Mr. Poole claimed in his Amended Complaint that the events prompting his complaint occurred on June 26

and 28, 2023. ECF No. 6 at 4. On those dates, Mr. Poole was no longer housed in the same cell as Mr. Chesil.[4]

According to undisputed medical records provided by Defendants, on or about June 27, 2023, Mr. Poole's mental status was being monitored in the segregation unit. ECF No. 26 at 10-11. Emily Jones, a Licensed Clinical Professional Counselor ("LCPC"), spoke with him, and encouraged him to "explore what he did well and what he could have done differently" to accomplish his goal of moving out of the cell with his cellmate. *Id*. at 10. She additionally confirmed he was not experiencing suicidal, homicidal, self-harming ideations, hallucinations, or delusions; nor did he present with psychosis. *Id*.

Mr. Poole was evaluated on June 28, 2023, during which it was noted he was assigned to administrative segregation pending transfer to another facility. *Id*. at 7. It was also noted that his "[m]ental status was within normal limits." *Id*. A treatment plan was developed that day with his current "problem/issue" identified as being "unable to [be] housed in general population." *Id*. at 5.

## II.  Standard of Review

### A.  Federal Rule of Civil Procedure 12(d)

Defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment pursuant to Rule 56. "A motion with this caption implicates the court's discretion under Fed. R. Civ. P. 12(d)." *Hayes v. Maryland Transit Admin.*, 708 F. Supp. 3d 683, 688 (D. Md. 2023), *aff'd,* No. 24-1482, 2024 WL 4262786 (4th Cir. Sept. 23, 2024) (quoting *Snyder v. Md. Dep't of Transp.*, No. CCB-21-930, 2022 WL 980395, at *4 (D. Md. Mar.

---

[4] Defendants also assert that Officer Grubbs was not working on June 26, 2023, and submit Exhibit E as proof of that allegation. ECF No. 25-1 at 9. The duty roster submitted lists Officer Grubbs' name under the heading "Officers on Regular Relief." ECF No. 25-6 at 3. Defendants have not provided this Court with an explanation of what "Regular Relief" means or how it differs from "unavailable for work," which is the heading on the adjacent column. *Id*.

31, 2022)). Federal Rule of Civil Procedure 12(d) provides: "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d).

"A district judge has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it'"; such discretion "should be exercised with great caution and attention to the parties' procedural rights." *Sammons v. McCarthy*, 606 F. Supp. 3d 165, 193 (D. Md. 2022) (quoting 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366 (3d ed. 2018)); *see Sol v. M&T Bank*, 713 F. Supp. 3d 89, 99–100 (D. Md. 2024) (same). "In general, courts are guided by whether consideration of extraneous material 'is likely to facilitate the disposition of the action,' and 'whether discovery prior to the utilization of the summary judgment procedure' is necessary." *Sammons*, 606 F. Supp. 3d at 193 (quoting 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366).

"There are two requirements for a proper Rule 12(d) conversion." *Greater Balt. Ctr. for Pregnancy Concerns. Inc. v. Mayor and City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013). First, "all parties be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment," including where a party "is aware that material outside the pleadings is before the court." *Id.* (quoting *Gay v. Wall,* 761 F.2d 175, 177 (4th Cir. 1985)). Second, customarily, the parties must first "be afforded a reasonable opportunity for discovery." *Gay*, 761 F.2d at 177. "Generally, if a party believes that summary judgment is procedurally inappropriate because the party needs discovery to properly oppose the motion, the party should

file a Rule 56(d) affidavit informing the court of such." *Sol*, 713 F. Supp. 3d at 100 (citing *Sager v. Hous. Comm'n of Anne Arundel Cnty.*, 855 F. Supp. 2d 524, 542–43 (D. Md. 2012)).

Plaintiff has not opposed the Motion or requested discovery to do so.

**B. Federal Rule of Civil Procedure 12(b)(6)**

A motion asserted under Federal Rule of Civil Procedure 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Therefore, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate

that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

### C. Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id*. at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted); *see Robinson v. Priority Auto. Huntersville, Inc.*, 70 F.4th 776, 780 (4th Cir. 2023) (providing that a party "need[s] to present more than their own unsupported speculation and conclusory allegations to survive"). Further, "[u]nder this standard, 'the mere existence of a scintilla of evidence' in favor of the non-movant's position is

insufficient to withstand the summary judgment motion." *Wai Man Tom v. Hospitality Ventures, LLC,* 980 F.2d 1027, 1037 (4th Cir. 2020) (quoting *Anderson*, 477 U.S. at 252).

In undertaking this inquiry, the court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). The court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Adin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the factfinder to resolve factual disputes, including issues of witness credibility. *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014).

### III. Analysis

#### A. Claims against Supervisory Defendants

Defendants assert that Mr. Poole's claims against Warden Bohrer and Assistant Warden Cornechia must be dismissed as the Amended Complaint fails to include any specific allegations against them; rather, they are simply named in the caption. ECF No. 25-1 at 7. Liability of supervisory officials "is not based on ordinary principles of *respondeat superior* but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported by allegation(s) that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens

like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Absent any allegations against Warden Bohrer or Assistant Warden Cornechia, there is no basis for assigning liability to them—which is to say, even assuming Plaintiff's allegations are true, there is no basis on which a reasonable factfinder could find either of them liable as a matter of law. The Amended Complaint will therefore be dismissed for failure to state a claim as to these two Defendants. Accordingly, the court need not reach Defendants' alternative arguments for summary judgment as to same.

### B.    Reference to PREA

With respect to Plaintiff's request for "tougher PREA laws," the court does not construe Plaintiff to seek to state a PREA claim; however, even were Plaintiff to intend to seek relief under the PREA, the court dismisses that aspect of the pleading for failure to state a claim.

"Section 1983 itself creates no rights," but rather "provides a method for vindicating federal rights elsewhere conferred." *Kendall v. City of Chesapeake*, 174 F.3d 437, 440 (4th Cir. 1999) (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994)); *accord Doe v. Broderick,* 225 F.3d 440, 447 (4th Cir. 2000). "[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Gonzaga Univ. v. Doe,* 536 U.S. 273, 286 (2002). Here, with the enactment of the PREA, Congress intended "[t]o provide for the analysis of the incidence and effects of prison rape in Federal, State, and local institutions and to provide information, resources, recommendations, and funding to protect individuals from prison rape."

PREA, Pub. L. No. 108-79, 117 Stat. 972 (2003). Nothing in the PREA suggests Congress intended to create a private right of action for prisoners to sue for non-compliance. *See Williams v. Dovey*, No. DKC-15-1891, 2016 WL 810707, at *7 (D. Md. Mar. 2, 2016) (citing cases). Thus, to the extent that Mr. Poole intended to raise a "PREA claim," it is dismissed. The court will therefore construe the Motion as a motion to dismiss pursuant to Rule 12(b)(6) to the extent Plaintiff intended to assert a claim under the PREA. Similarly, the court therefore declines to consider evidence outside the Amended Complaint in ruling on argument related to same.

      **C.**      **Claim against Officer Christopher Grubbs**

The court next considers whether conversion of the Motion to one for summary judgment is appropriate as to Mr. Poole's claims against Officer Grubbs for failure to protect him from violence. Here, as set forth above, Plaintiff has been given notice that the court may treat the Motion as one for summary judgment based on its title; and he has not requested any discovery to enable him to respond to the motion. Indeed, he has not responded at all. Accordingly, the court finds it appropriate to convert the Motion to one for summary judgment as to the claim against Officer Grubbs.

To sustain an Eighth Amendment claim for failure to protect from violence, a plaintiff must plausibly allege that the defendant exhibited deliberate or callous indifference to a specific known risk of harm. *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). "Prison conditions may be 'restrictive and even harsh,' but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) (citations omitted). "[A] prison official cannot be found liable under the Eighth Amendment for

denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837, *see also Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997).

"The Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (citing *Farmer*, 511 U.S. at 832). Those duties "include maintaining humane conditions of confinement, including the provision of adequate medical care and . . . 'reasonable measures to guarantee the safety of the inmates.'" *Id*. "[N]ot every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015). A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established. *See Raynor*, 817 F.3d at 127.

Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk of either injury. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014). The objective inquiry requires this court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). A genuine dispute of fact regarding the extent of the injury suffered precludes summary judgment. *Raynor*, 817 F.3d at 128.

Subjectively, a plaintiff must establish the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834. Evidence establishing a culpable state of mind requires actual knowledge of an

excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which a reasonable inference could be drawn that a substantial risk of serious harm exists, and that the inference was drawn. *Id*. at 837. A plaintiff may "prove an official's actual knowledge of a substantial risk 'in the usual ways including inference from circumstantial evidence" so that "'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Raynor*, 817 F.3d at 128, *see also Ford v. Hooks*, 108 F.4th 224, 231 (4th Cir. 2024) (finding officer who questioned prisoner on housing unit publicly and loudly about why he wanted protective custody may have knowingly exacerbated the danger making response unreasonable).

Actual knowledge of a substantial risk does not, alone, provide a basis for liability. Where prison officials responded reasonably to a risk, they may be found free from liability. *Farmer*, 511 U.S. at 844. Where prison officials concluded they did not have sufficient information to carry out an appropriate investigation of a prisoner-plaintiff's claim that his life was endangered, they cannot be said to have "*consciously disregarded*" complained-of risks. *Ford*, 108 F.4th at 231 (noting plaintiff had not provided names of prisoners who represented a threat and prison officials did not recognize their responses were inappropriate) (emphasis in original).

Mr. Poole's allegation against Officer Grubbs is not supported by sworn declaration or other form of admissible evidence; nor is there any evidence before the court that Mr. Poole was assaulted as alleged. Rather, it appears from the undisputed evidence submitted by Defendants that Mr. Poole simply claimed he was in danger and suicidal as a means to obtain the cell transfer he wanted. The medical records are replete with his admissions that he was not being honest about his claims or his intentions. Given the undisputed record evidence, Plaintiff has failed to generate

12

a genuine dispute of material fact, and Officer Grubbs is entitled to judgment in his favor as a matter of law pursuant to Rule 56.

## IV. Conclusion

By separate order, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment shall be granted.

/S/

November 10, 2025

Julie R. Rubin
United States District Judge